IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTY TILGHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-73-D |
| | ) | |
| RON KIRBY and COMANCHE | ) | |
| COUNTY COMMISSIONERS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are cross-motions for summary judgment by Plaintiff Misty Tilghman ("Tilghman") [Doc. No. 95], Defendant Comanche County Commissioners ("Commissioners") [Doc. No. 103], and Defendant Ron Kirby ("Kirby") [Doc. No. 106]. The matter is fully briefed and at issue.

## INTRODUCTION

This case arises from Tilghman's employment in the Comanche County Commissioners' office, where she alleges she was subjected to a hostile work environment due to sexual harassment by Kirby, who was her supervisor and, at the time, a county commissioner himself. Tilghman's Motion requests this Court find, as a matter of law, that Kirby's actions constituted sexual harassment (thereby creating a hostile work environment), Kirby was Plaintiff's "supervisor" for purposes of her harassment claim, and the Commissioners are liable for Kirby's actions. Tilghman's

claims arise under 42 U.S.C. § 1983, Oklahoma's Anti-Discrimination Act ("OADA"), 25 OKLA. STAT. §§ 1101 *et seq.*, and the common law.

Defendants contend the facts, even when viewed favorably to Tilghman, fail to establish a hostile work environment due to sexual harassment. Commissioners also contend they exercised reasonable care to prevent and correct any sexually harassing behavior, Tilghman failed to take advantage of remedial opportunities made available to her, and Tilghman can point to no policy, custom, or practice by the Commissioners which operated as the "moving force" behind any constitutional violations. Defendants move for summary judgment on Tilghman's harassment claims, as well as her tort claim for intentional infliction of emotional distress.[1]

## BACKGROUND

The Comanche County Board of Commissioners is the administrative and managing body of Comanche County, Oklahoma (the "County"). The County's political and corporate powers are exercised by the Commissioners. The County is

---

[1]Tilghman previously dismissed her intentional infliction of emotional distress claim against the Commissioners [Doc. No. 117], thus, the Commissioners' Motion in that respect is moot. Tilghman's Complaint also included a claim for retaliation and an allegation that she was denied other employment opportunities due to the Commissioners' failure to post job openings. *See* First Amend. Compl. at 5 [Doc. No. 4]. None of the parties seek summary judgment on these claims, and thus the Court declines to address them in this order.

divided into three districts–one commissioner is elected from each district. For several years, Kirby served as a commissioner representing District 2. On December 23, 2008, Tilghman was hired to be Kirby's receptionist and he acted as her supervisor. Tilghman worked in the Commissioners' office for approximately three and a half years until her resignation in June 2012.

Beginning in February 2009, Tilghman alleges that Kirby subjected her to a hostile work environment–by means of sexual harassment–in the following ways:

1. Kirby invited her to his office to view "inappropriate" images on his computer;

2. Once, when Tilghman was having her desk chair fixed for squeaking, Kirby commented, "Well, Misty, if you needed a lube job, I'd have lubed you up";

3. She saw nude photos on Kirby's phone;

4. Kirby used the names "Sugar" and "Babe" in casual conversation and often used vulgar language around her;

5. At times, Kirby would get close to her and expect a kiss, which led to Tilghman kissing Kirby on the cheek one time;

6. Kirby touched her hair three to five times;

7. Kirby touched her inappropriately and clasped the side of her rib cage;

8. Kirby threw a condom at her "maybe a couple" of times;

9. Kirby would frequently comment on her clothing;

10. While cleaning Kirby's desk, she found photos of Kirby partially clothed and others of nude people;

11. Kirby forwarded sexual jokes to her from his phone;

12. Kirby asked for hugs from female employees and touched them, in her opinion, "inappropriately";[2]

13. Kirby once told a co-worker that she had "something on [her] pants" and reached for her; and

14. Kirby would ask Tilghman to help get blood off his clothing after checking his blood/sugar level.

During this same time, however, Tilghman went on to socialize with Kirby on several occasions: (1) she went on fishing trips with Kirby and his wife; (2) she attended "one or two" fish fries at Kirby's house; (3) while dining out with her husband, they ran into Kirby and joined him at his table; (4) she and a female companion joined Kirby for drinks at a bar; (5) she attended one of Kirby's fundraisers and contributed to his campaign; (6) she participated in buying gifts for

---

[2]The Court may consider any gender-based harassment when determining the existence of a hostile work environment, including allegations of sexual harassment directed toward Tilghman's co-workers. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415-16 (10th Cir.1987); *see also Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1385 (10th Cir.1991) (stating in dicta that *Hicks* "held even a woman who was never herself the object of sexual harassment might have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive.").

Kirby's birthday and Boss' Day; (7) during a Christmas party, she hugged and thanked him for a gift; (8) she laughed at some of the jokes on Kirby's phone and would forward her own jokes to him; and (9) she attended Kirby's office farewell gathering. Nothing in the record indicates Tilghman did these things out of fear or compulsion.

Tilghman complained about Kirby to Carrie Tubbs ("Tubbs"), who, at the time, was First Deputy Commissioner and had her own issues with Kirby.[3] Tubbs became aware Kirby had a photo of her head superimposed upon a nude body. Tubbs' complaints led to an investigation by the Oklahoma State Bureau of Investigation ("OSBI"). The OSBI's inquiry precipitated Kirby's resignation on February 13, 2012. Two months after Kirby resigned, Tilghman filed a tort claim notice alleging she was subjected to sexual harassment and gender discrimination. After receiving what she felt was unjustified criticism of her job performance, Tilghman took medical leave and eventually resigned.

---

[3]Tilghman and Tubbs were friends and often shared personal conversations with each other. Tilghman believed Tubbs was her supervisor and felt she could go to her with any complaint. Tilghman did not express her concerns to the other commissioners, the district attorney or assistant district attorneys as provided in the grievance procedures of the County's Employee Personnel Policy Handbook.

## STANDARD

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). When reviewing cross-motions for summary judgment, the Court must evaluate each motion on its own merits, with all inferences construed in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). When the parties file cross motions for summary judgment, the Court is entitled to assume no evidence needs to be considered other than that filed by the parties. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its

prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler*, 144 F.3d at 670 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004).

## DISCUSSION

Though courts generally caution against granting summary judgment in sexual harassment cases, summary judgment remains appropriate in those situations where "it is clear to ... [the] court that after assessing the frequency of the behavior measured in light of its seriousness, the facts cannot, as a matter of law, be the basis of a hostile work environment claim." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (granting defendant's motion for summary judgment where plaintiff did not proffer evidence of sexual harassment sufficiently severe or pervasive to alter the

conditions of her employment and create an abusive work environment).

## I. TILGHMAN'S SEXUAL HARASSMENT CLAIMS UNDER THE OKLAHOMA ANTI-DISCRIMINATION ACT AND 42 U.S.C. § 1983

### A. The OADA

The OADA prohibits sexual harassment in the workplace. It states "[i]t is a discriminatory practice for an employer ... to discriminate against an individual with respect to ... sex[.]" 25 OKLA. STAT. § 1302(A)(emphasis added). This Court has noted, and the parties agree, that claims under the OADA are evaluated using the same standards as claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a claim that fails under Title VII will also fail under the OADA. *See Hamilton v. Okla. City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (citing *McCully v. American Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246 (N.D. Okla. 2010) (further citations omitted)); *see also Barzellone v. City of Tulsa*, 210 F.3d 389, 2000 WL 339213 at *5 (10th Cir. Mar. 31, 2000) (unpublished); *Myers v. Knight Protective Service, Inc.*, No. CIV–10–866–C, 2011 WL 3585404 at *1 (W.D. Okla. Aug. 16, 2011) (purpose of OADA is to implement policies embodied in several federal statutes, including Title VII).

It is well settled that Title VII does not serve as a "general civility code" and is not meant to remedy "the ordinary tribulations of the workplace, such as the

sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(citation omitted); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012). To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *see also Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995). To survive summary judgment, Tilghman "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)).

"[There] is not, and by its nature cannot be, a mathematically precise test" for a hostile work environment claim. *Hernandez*, 684 F.3d at 957 (quoting *Harris*, 510 U.S. at 22); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) ("[t]here is no 'magic number' of incidents required to establish a hostile environment."). In determining whether the alleged sexual harassment rises to an

actionable level, the Court must examine the totality of circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Harris*, 510 U.S. at 23. There is also both an objective and subjective component to a hostile work environment claim:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris*, 510 U.S. at 21-22.

The central question facing the Court is whether Kirby's behavior was so severe or pervasive so as to alter the conditions of Tilghman's employment and create a hostile environment. After carefully weighing the evidence in the record, the Court finds that, under the controlling law, a rational juror would not conclude that her workplace was permeated with discriminatory intimidation, ridicule, and insult.

Tilghman began working in the commissioners' office, under Kirby's supervision, in December 2008; she resigned in July 2012. Viewing the record as a

whole, including the totality of the circumstances surrounding the conduct complained of, Tilghman's description of the workplace during those three and a half years cannot be fairly described as being "permeated with discriminatory intimidation, ridicule, and insult." *Davis*, 142 F.3d at 1341; *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996). Tilghman's own testimony is, at best, vague as to when many of the complained-of actions occurred. Nonetheless, even when viewing the evidence in the light most favorable to her, most of the instances involved sporadic offensive utterances and boorish, juvenile conduct.

Moreover, Tilghman does not seriously assert that she felt humiliated, intimidated or threatened by Kirby's conduct or otherwise perceived his actions as being abusive. To the contrary, during the time she alleged Kirby was behaving improperly, Tilghman willingly socialized with Kirby, both in and out of the office, on several occasions. *Compare Bannon v. Univ. of Chicago*, 503 F.3d 623, 629 (7th Cir. 2007) (plaintiff failed to demonstrate that she considered workplace to be subjectively offensive where, *inter alia*, she socialized with supervisor outside of work several times during same period when she said he was harassing her). Further, there is no evidence that tends to show Kirby's behavior unreasonably interfered with Tilghman's job performance.

This conclusion is not intended to justify Kirby's behavior or minimize what

Tilghman asserts was offensive; Kirby's actions were certainly in poor taste and inappropriate. However, the facts, when viewed in their totality, do not constitute sexual harassment that is severe or pervasive and thus actionable under Tenth Circuit jurisprudence. Because Tilghman has failed to proffer sufficient evidence showing the alleged conduct was so extreme as to create an abusive working environment or that it permeated her job with discriminatory intimidation, ridicule and insult, the Court finds Defendants are entitled to summary judgment on her hostile work environment/sexual harassment claim.

B.     **Section 1983**

Tilghman's § 1983 claim, which alleges Kirby deprived her of her constitutional rights to equal protection and due process, is based on the same evidence as her OADA claim. However, as stated by the Tenth Circuit, more is required under § 1983 to establish a sexual harassment claim than under Title VII, and therefore, the OADA. *Abeyta v. Chama Valley Indep. Schl. Dist.*, 77 F.3d 1253, 1255 (10th Cir. 1996). In *Miller v. Regents of Univ. of Colo.*, 188 F.3d 518, 1999 WL 506520 (10th Cir. July 19, 1999) (unpublished), after holding the plaintiff's Title VII claim failed because she failed to show she was subject to a hostile work environment, the Tenth Circuit summarily dismissed her § 1983 claim:

> Ms. Miller's evidence does not sufficiently demonstrate that Mr. Corbridge committed actionable harassment under Title VII. Because she cannot demonstrate that Mr. Corbridge's conduct violated Title VII, her constitutional claim based on the same conduct fails as well.

*Id*. at *10; *accord Beattie v. Farnsworth Middle School*, 143 F. Supp. 2d 220, 232 (N.D.N.Y. 1998) ("Not all conduct, however, that constitutes sexual harassment under Title VII is sufficient to establish a constitutional violation.") (citing *Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994)); *Keenan v. Allan*, 889 F.Supp. 1320, 1362 (E.D. Wash. 1995) ("Harassment claims based on § 1983 share with Title VII ... the requirement that plaintiff prove a sexually hostile work environment.... However, a Fourteenth Amendment claimant has an additional and higher burden.").

In light of this Court's determination that Tilghman has presented insufficient evidence to support a claim under the OADA of hostile work environment based on sexual harassment, it also grants summary judgment to Defendants as to Tilghman's § 1983 claim.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Oklahoma law, there are four elements to an intentional infliction of emotional distress claim: (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Starr v. Pearle Vision,*

*Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995) (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991)). The tort does not extend to "mere insults, indignities, threats, or occasional acts that are inconsiderate and unkind." *Id*. at 1558 (citing *Eddy v. Brown*, 1986 OK 3, ¶ 7, 715 P.2d 74, 76) (internal quotations and paraphrasing omitted). Instead, the tortfeasor's conduct must be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." *Id.* (quoting *Eddy*, 715 P.2d at 77). In fact, "[n]othing short of '*[e]xtraordinary* transgressions of the bounds of civility' will give rise to liability for intentional infliction of emotional distress." *Id*. (quoting *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 432 (10th Cir. 1990) (emphasis in original).

In this case, there is no evidentiary support for a finding of intentional infliction of emotional distress. For the reasons already stated, the Court is not persuaded that Kirby's actions constituted pervasive harassment, let alone "outrageous" conduct. Even if Tilghman had demonstrated Kirby could be found liable for sexual harassment, such a conclusion would not be enough here, for even if conduct constituted "harassment," it does not necessarily become "outrageous." *See Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 688 (10th Cir. 2007) (conduct actionable under Title VII does not necessarily rise to the level of outrageousness required for intentional infliction of emotional distress).

The Court emphasizes that its determination that Tilghman cannot maintain a sexual harassment hostile work environment claim based on the present factual record is not to be interpreted that this was at all an ideal or professional work environment. Clearly, Kirby's actions were at times rude, inappropriate, and unprofessional. Nonetheless, for the reasons stated, the Court finds that, as a matter of law, summary judgment in favor of Defendants is required on the present record and under the applicable law.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment [Doc. No. 95] is **DENIED**. Defendant Comanche County Commissioners's Motion for Summary Judgment [Doc. No. 103] and Ron Kirby's Motion for Summary Judgment [Doc. No. 106] are **GRANTED** as to the issues raised therein.[4]

**IT IS SO ORDERED** this 16th day of September, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[4] As a result of this order, Defendants' Joint *Daubert* Motion to Exclude Testimony of Douglas Brady, Ph.D [Doc. No. 107] is moot. Further, the parties are directed to file, within twenty-one (21) days of the date of this Order, a Joint Status Report addressing the claims that remain for determination in this case.